**TITINGTON, An Incompetent, Guardianship, In re.**

Probate Court, Montgomery County.

No. 141275. Decided November 1, 1958.

564

James H. McGee, Dayton, for applicant-ward.
Baver & Doan, Miamisburg, for guardian.

(ZIEGEL, J., of Preble County, sitting by assignment in Montgomery County.)

### OPINION

By ZIEGEL, J.

Pending before the Court is an application to set aside a guardianship. The prayer of the application is that the Court declare all action taken by the guardian null and void, and that the Court strike and expunge from the files all proceedings relating to the appointment of a guardian. At the outset it must be pointed out that such an application, if valid at all, must be based upon common law, as distinguished from statutory, principles. The appointment of a guardian and the administration of the guardianship, including a procedure for terminating that guardianship are provided for in **Chapter 2111 R. C.** Specifically, **§2111.47 R. C.**, sets forth the standard method for terminating a guardianship of an incompetent person. In a habeas corpus proceedings, the Supreme Court has held that this method of terminating is exclusive. See **In re Clendenning, 145 Oh St 82 at 89; 30 O. O. 301 at 304; 60 N. E. (2d) 276.**

From the various papers on file in this cause it appears that on

January 10, 1958, Robert B. Brumbaugh filed an application for the appointment of himself or some suitable person as guardian for Henry Titington, whom he alleges to be incompetent by reason of mental disability. Hearing was set for January 17, 1958, and notice was duly issued for the alleged incompetent and according to the return indorsed on the back of the notice was personally served upon the prospective ward the same day, January 10, 1958. On January 17, 1958, an entry was made on the journal of the Court to the effect that Henry Titington was incompetent by reason of mental disability and was incapable of taking care of and/or preserving his property, and that a guardian should be appointed for him. Letters of Guardianship were accordingly issued to Mr. Brumbaugh.

At the hearing on the application in question, Titington denied ever receiving any notice of the hearing on the application to appoint a guardian for him. The deputy sheriff who served the notice and an attendant at the County Home where Titington was residing at the time, however, both testified as to the proper service of the notice in question. This Court, therefore, finds as a matter of fact that the prospective ward actually did receive proper notice of the hearing. The law cannot take into consideration the fact that he may not have understood its significance.

Applicant also contends that his prayer should be granted for the reason that his next of kin were not notified. The only next of kin, however, about which Titington could advise the Court then lived and now live outside Montgomery County. Sec. 2111.04 R. C., requires notice only upon "the next of kin of such person for whom appointment is sought known to reside in the county in which application is made." Next of kin residing outside of Montgomery County are therefore not entitled to notice.

The evidence revealed that the guardian, Robert B. Brumbaugh, is an attorney at law practicing in the City of Dayton, Montgomery County, Ohio. Upon receiving a telephone call from the Superintendent of the Montgomery County Home to the effect that she believed that Mr. Titington should have a guardian, and being requested by said superintendent to take appropriate steps, Mr. Brumbaugh filed an application for the appointment of himself or some suitable person as guardian. He did not personally know and had never seen his prospective ward. Applicant therefore contends that the allegations of mental incapacity in this application constitute a fraud upon the Court.

In its first sentence, §2111.02 R. C., provides that "When found necessary, the probate court on its own motion or on application by any interested party shall appoint a guardian * * *." Was Mr. Brumbaugh an "interested party"? This Court believes he was, and so holds. Mr. Brumbaugh did not proceed on his own initiative. While he did not personally see or even know his prospective ward, he was advised on sufficiently good authority that Mr. Titington was mentally incapacitated to justify his filing an application for a guardian. The very liberal language used in §2111.02 R. C., i. e. "on its own motion or an application by any interested party," indicated to this Court that the general assembly did not intend that other provisions of law such as §§2309.46 (25)

and 2309.53 R. C., pertaining to situations where an attorney at law may verify a pleading should apply here. Mr. Brumbaugh was not verifying the application for the appointment of a guardian as an attorney, but rather as an "interested person," who was submitting a situation to the probate court for its finding.

Thus, it appears from the record that the jurisdiction of the Court to hear the application was complete. A proper application for the appointment of a guardian had been filed and notice had been given in due time to the only person entitled by law to notice. There is no question raised as to whether the prospective ward was a resident of the county in which the application was filed. Applicant's other allegations and arguments attack the decision of the Court finding a guardian to be necessary, contending that there was no hearing and that the ward is not now nor has ever been one of the persons designated in §2111.02 R. C., for whom a guardian may legally be appointed.

The question that presents itself is whether those findings can be reviewed in this proceedings. It is well settled that an order appointing a guardian, made by a probate court, in the exercise of jurisdiction, can not be collaterally impeached. Where the record shows nothing to the contrary, it will be conclusively presumed, in all collateral proceedings, that such order was made upon full proof of all the facts necessary to authorize it. **Shroyer v. Richmond, 16 Oh St 455; Heckman v. Adams, 50 Oh St 305; In re Clendenning, 145 Oh St 82, 30 O. O. 301, 60 N. E. (2d) 276; In re Gerstenek, 139 N. E. (2d) 64; 26 O. Jur. 2d 414, par. 60.** Is the application in question to have the Court strike and expunge from the files all proceedings relating to the appointment of a guardian for Mr. Titington a direct or collateral attack?

A direct attack upon a judgment has been defined to be one by which the judgment is directly assailed in some mode authorized by law while a collateral attack is defined as an attempt to defeat the operation of a judgment in a proceeding where some new right derived from or through the judgment is involved, or in some **incidental proceeding not provided by law for the express purpose of attacking it. 32 O. Jur. 2d 382, par. 710,** and cases cited thereunder. The general rule that a collateral attack may not be made upon a judgment rendered by a court of competent jurisdiction is applicable to attacks by parties to the action in which the judgment is rendered. **32 O. Jur. 2d 376, Par. 704.**

The statute provides two methods for directly attacking the order of appointment of a guardian. The first is by appeal to a higher court from the order of the Probate Court as provided in §2101.42 R. C. The second direct method of attack is set forth in §2111.47 R. C. Any other kind of an attack upon the validity of a guardianship may be regarded as collateral and as such can not succeed. See **26 O. Jur. 2d 415, par. 61.**

Sec. 2111.47 R. C., provides that upon the satisfactory proof that the necessity for the guardianship no longer exists or that **the letters of appointment were improperly issued,** the Probate Court shall order the guardianship * * * terminated. Every allegation which applicant sets forth in his application herein to strike and expunge from the files can properly be considered on a motion to terminate the guardianship brought under §2111.47 R. C., on the grounds that the letters of

appointment were improperly issued. The Supreme Court has stated that this section provides the exclusive and adequate method whereby a guardianship may be terminated and control of a ward's property restored. In re Clendenning, supra.

The application under consideration here will be denied. An entry to that effect may be prepared by counsel for the guardian with costs to the applicant.