HILL, INCOMPETENT, GUARDIANSHIP, IN RE.

Probate Court, Champaign County.

No. 18844. Decided December 30, 1963.

238

*Mr. Richard P. Faulkner*, for Judge Ann C. Roberts.

*Miss Grace Fern Heck* and *Mr. Leo Faust*, for affiant, Herman R. Deaton.

TAFT, C. J. This matter was referred to me pursuant to an affidavit of September 24, 1963, which reads so far as pertinent:

"Grace Fern Heck, being first duly sworn, says that she is counsel for Herman R. Deaton, applicant in an application for appointment as successor guardian of the above incompetent, heretofore filed in this court on the 23rd day of September, 1963; that said application is now pending in the Probate Court of Champaign County, Ohio, before the Honorable Ann C. Roberts, Probate Judge.

"Affiant says that there is prejudice on the part of said probate judge, Ann C. Roberts, before whom said application is now pending against the applicant, Herman R. Deaton, and bias in favor of one Flora Ellen McMorran, who has filed a subsequent purported application for appointment as such guardian in said court and that said judge is therefore disqualified to hear and determine all matters in connection with the appointment of a successor guardian of said incompetent."

Any such bias or prejudice was denied in a counter-affidavit of Judge Roberts.

Pursuant to Sections 2301.18 and 2301.26, Revised Code, the matter was referred by me for the taking of testimony to David L. Haney, the reporter of the Common Pleas Court of Champaign County.

At the hearing before the referee, counsel for Judge Roberts

questioned the right of Mr. Deaton or his counsel to file an affidavit of prejudice.

The only possible basis for any authority of the Chief Justice of the Supreme Court to do anything with regard to an affidavit relating to the bias or prejudice of a probate judge is Section 2101.39, Revised Code. cf. Article IV, Section 3 relating to common pleas judges.

So far as pertinent, Section 2101.39, Revised Code, reads:

"When a probate judge has a *prejudice*, either *for or against a party* or his counsel *in* a *matter or cause pending* before him, or is otherwise interested in such cause or matter, or disqualified to sit therein * * * any *party to such cause or matter, or* the *counsel of* any such *party*, may file an affidavit setting forth such prejudice, interest or disqualification * * *

"Forthwith upon the filing of such affidavit * * *the judge shall notify the Chief Justice of the Supreme Court, who, if satisfied that such prejudice, interest, or disqualification exists, shall assign some probate judge or some judge of the court of common pleas to *hear* the *cause or matter* in place of such probate judge. The judge assigned shall proceed and *try such cause or matter*. The affidavit referred to in this section shall be filed not less than three days prior to the time set for the *hearing of such cause or matter*."

As the words of that statute indicate, it confers no authority upon the Chief Justice except with regard to an affidavit filed by (or by counsel of) a "party * * * in a matter or cause pending before" the probate judge which must be tried or upon which a "hearing" is necessary.

Except for the provisions in Section 2111.02, Revised Code, that "if a person is incompetent due to physical disability, the consent of the incompetent must first be obtained before the appointment of a guardian for him, and such person may select a guardian who shall be appointed if a suitable person," our statutes do not provide that anyone shall have any kind of a right to be appointed guardian for an incompetent. The General Assembly knew how to provide for such a right. This is demonstrated not only by the foregoing part of Section 2111.02, Revised Code, but also by Section 2113.06, Revised Code, providing for appointment of administrators.

As to guardians for an incompetent, our statutes apparently contemplate, except as noted above, that anyone "interested" in the position ["interested party" in Section 2111.02 apparently means any interested person] may apply for that position (see Sections 2111.02 and 2111.03, Revised Code) although, if not at least a resident of the state (see Section 2109.21, Revised Code), such applicant should have no hope of appointment. Thus there obviously may be many applicants for the position of guardian of an incompetent.

Section 2111.02, Revised Code, provides for appointment of a guardian by "the probate court *on its own motion or* on application by any interested party."

Where the probate court appoints a guardian for an incompetent, either on its own motion or pursuant to an application made in accordance with Section 2111.03, Revised Code, there is no statutory requirement for a hearing on every other application which may have been filed pursuant to Section 2111.03, Revised Code. In such an instance, the probate court can apparently either decline to have a hearing on what would then have become a superfluous application for appointment, overrule such application without hearing or dismiss it without hearing as involving a moot matter.

Deaton claims to be a party to a matter that must be heard by reason of his application pursuant to Section 2111.03, Revised Code, for appointment as guardian. That application, which is on a printed form, ends with a prayer "for the appointment of himself *or some other suitable person* as guardian of the person and estate of said Zilpha A. Hill."

In order to have any authority to appoint a guardian for Zilpha A. Hill, the probate court had to determine first that Zilpha A. Hill was "incompetent." See Section 2111.02, Revised Code. Deaton's application in effect requests the probate court to do that, something which the probate court had already done when it appointed Ben McMorran as her guardian in 1960. It is significant that even the printed form used and as filled in by Deaton in effect asks only for appointment of some "suitable person as guardian,"—not only for appointment of Deaton.

An application for appointment as guardian for an in-

competent, which is filed pursuant to Sections 2111.02 and 2111.03, Revised Code, does raise a matter for determination by the probate court, i. e., the question as to whether the person for whom a guardian is sought is incompetent. The hearing specified by Section 2111.04 is provided for determination of that question. Certainly, the person for whom a guardian is sought is a party to that proceeding. Furthermore, the applicant, either as representing the public or the interests of the person for whom a guardian is sought (see *Shroyer* v. *Richmond*, 16 Ohio St., 455, 466) or perhaps even of those who may ultimately receive his property, might be considered as a party to the matter involved in determining that question of competency. However, any interest of such applicant as a party would terminate on the determination of that question in his favor.

In *In re. Guardianship of Titington*, 82 Abs., 563, which is relied upon by Deaton, unlike in the instant case, that question was not determined in favor of the applicant. On the contrary, it was determined against him. He had therefore a right to appeal to seek the determination he was still interested in and had requested, i. e., a determination of incompetency.

If the question of competency is again litigated, one on whose application a guardian was originally appointed might again be considered a party to any hearing necessary on that question. See Section 2111.47, Revised Code, providing for notice to such applicant where question of terminating guardianship arises.

In the instant case, the ward was determined an incompetent in 1960. Deaton's application cannot raise that already determined question even though it advances a different and additional reason for that determination, and even though that reason might be advanced in opposing an application under Section 2111.47, Revised Code, to terminate the guardianship.

Section 2111.04, Revised Code, clearly applies to the original appointment of a guardian for an incompetent. Apart from Section 2109.26, Revised Code, no statute makes provision as to what shall be done on the death of the guardian originally and properly appointed. So far as pertinent, that statute reads:

Whenever such a vacancy occurs [i. e., "if a sole fiduciary

dies"—by Section 2109.01, Revised Code, the word "fiduciary" as used in Section 2109.26, Revised Code, is defined so as to include a guardian appointed pursuant to Sections 2111.01, et seq., Revised Code] and such contingency is not otherwise provided for by law * * *, the *court* shall, *on* its *own motion or on* the *application of any person* beneficially *interested,* issue letters of appointment as fiduciary to some competent person who shall qualify according to law * * *."

There is no statute requiring any hearing on the matter *as to who shall be appointed* a guardian, at least as to who shall be appointed a successor to a deceased guardian.

In *In re. Clendenning,* 145 Ohio St., 82, it is said at page 92:

"A ward receives such status from a proceeding in rem in the probate court. The ward becomes the ward of the court. The control of the ward's person and property remains in the probate court with the discharge of the duties in respect thereof being delegated to a guardian as the agent of the court and subject to the orders of the court."

Although as a matter of practice, the probate court usually endeavors to appoint one or someone acceptable to some or all of the next of kin of the ward, it is not required to do so where, as in Ohio, no statute provides therefor. See 21 A. L. R. 2nd, 880. In other words (except as herein noted with respect to one "incompetent due to physical disability") the probate court is, as is any principal, permitted to select its own agent from among those meeting the statutory qualifications.

It may be that the competency of a guardian appointed by the probate court can be questioned by proceedings initiated pursuant to either Sections 2111.47 or 2109.24, Revised Code, or both. Such proceedings can be instituted by the ward (see *Robinson* v. *Wagner, Guardian,* 95 Ohio St., 300 and *Schafer* v. *Haller, Guardian,* 108 Ohio St., 322) and perhaps they may be initiated by others on his behalf. See *Heckman* v. *Adams,* 50 Ohio St., 305. However, that question is not a matter that must be tried or upon which a hearing is necessary at the time of the appointment of a successor to a deceased guardian who was previously properly appointed.

Deaton further claims to be a party because he is one of the next of kin of the ward. However, there is no statute giving him any right as such either to appointment as guardian or to

litigate the matter as to who shall be appointed. Since he is a nonresident of the county, Section 2111.04, Revised Code, did not even require that he be given notice of the hearing required before a guardian was originally appointed.

As a next of kin, he may be hopeful that he will receive something from the ward's estate. Any such hope may however be defeated by a valid will of the ward or by his death prior to hers. However, it might represent a sufficient interest in her property to justify a decision such as *In re. Guardianship of Tillman*, 100 Ohio App., 291, relied upon by Deaton permitting such a next of kin to file exceptions to an account of her guardian or even taking other legal action on her behalf to protect her property rights.

My conclusion is that Deaton is not now a party within the meaning of Section 2101.39, Revised Code, to any matter now before the probate court upon which a hearing is necessary. It follows that there is no statutory authority for me to take any action on the foregoing affidavit of prejudice.

The matter is therefore referred back to the probate court for taxation of such costs as it finds to be lawful and reasonable and for such judgment with respect thereto as it determines to be proper.